# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **JAMES A. BROOKS III** | ) | |
| **15001 Kennerdown Ave.** | ) | |
| **Maple Heights, Ohio 44137** | ) | **JUDGE:** |
| | ) | |
| **and** | ) | |
| | ) | |
| **WILLIAM M. ADAMS** | ) | |
| **37206 Tail Feather Dr.** | ) | **CASE NO.:** |
| **North Ridgeville, Ohio 44039,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **COMPLAINT FOR MONEY** |
| **vs.** | ) | **DAMAGES ONLY** |
| | ) | |
| **CITY OF CLEVELAND** | ) | |
| **C/o THE LAW DIRECTOR,** | ) | |
| **Department of Law** | ) | |
| **601 Lakeside Ave., Rm. 106** | ) | (JURY DEMAND ENDORSED |
| **Cleveland, Ohio 44114** | ) | HEREON) |
| | ) | |
| **and** | ) | |
| | ) | |
| **CLEVELAND CITY COUNCIL** | ) | |
| **C/o PATRICIA J. BRITT, CITY CLERK** | ) | |
| **Clerk of Council** | ) | |
| **601 Lakeside Ave.** | ) | |
| **Cleveland, Ohio 44114** | ) | |
| | ) | |
| **And** | ) | |
| | ) | |
| **AMI J. PATEL, ESQ.** | ) | |
| **Zashin & Rich** | ) | |
| **950 Main Ave., 4th Floor** | ) | |
| **Cleveland, Ohio 44113** | ) | |
| | ) | |
| **And** | ) | |
| | ) | |
| **WILLIAM M. MENZLORA, ESQ.** | ) | |
| **Chief Assistant Director of Law** | ) | |
| **601 Lakeside Ave., Room 106** | ) | |
| **Cleveland, Ohio 44114** | ) | |

1

Now come the Plaintiffs, Mr. James A. Brooks III (hereinafter "Brooks" or "the Plaintiff(s)") and Mr. William M. Adams (hereinafter "Adams" or "the Plaintiff(s)"), through Counsel, and state, plead, and allege as follows for their Complaint:

## I.   <u>PARTIES</u>

1. The Plaintiff, Brooks, is a private individual who currently resides at the address listed above.  For eight (8) years Brooks was both a U.S. Navy Reserve sailor and a Cleveland police officer.  From October 3rd, 1988, to September of 2001, he was a drilling member of the United States Navy Reserve (hereinafter "USNR") as an enlisted sailor,  his non-career military service.  On February 1, 1993, he began his employment with the City of Cleveland as an officer in the Cleveland Police Department, his full-time civilian employment.  He eventually retired from the Cleveland Police Department (hereinafter "CPD") on March 4, 2019, after twenty-six (26) years of service.  1993 was the first year in which the Brooks was eligible for USERRA and Ohio Paid Military Leave (hereinafter, "PML"), as a Cleveland police officer.  Brooks was eligible for USERRA and Ohio PML from 1993-2001.  These were the eight (8) years Brooks' non-career military service, his active ("drilling") reserve duty in the USNR, overlapped his civilian public service career as a police officer in the CPD.

2. The Plaintiff, Mr. William M. Adams, is a private individual who currently resides at the address listed above.  On March 8th, 1993, he became a drilling member of the Ohio Army National Guard, his non-career military service,  from which he will retire, effective November 25, 2025, at the rank of Command Sergeant Major.  He is

currently assigned to Special Troops Command as the Senior Enlisted Advisor to Brig. General Stone (OHARNG).  On February 17, 1998, he became  employed by the City of Cleveland as an officer in the Cleveland Police Department, his full-time civilian employment.  Currently Adams is a Detective in the Employee Assistance Unit of the Cleveland Police Department.  June 1998 was the first time Adams was eligible for USERRA and Ohio Paid Military Leave (hereinafter, "PML").  While employed by the Cleveland Police Department and serving in the Ohio Army National Guard, this Plaintiff was deployed on an active duty four (4) times for a total of almost three and a half years (3 & ½ years).  His most recent deployment was from February 1, 2015, through January 21, 2016, to Kuwait for Operation Enduring Freedom.  During a deployment to Iraq from March 5, 2003, through February 14, 2004, as part of Operation Iraqi Freedom, Adams earned an individual award of merit for his military service:  the Bronze Star.  He also earned the Combat Action Badge on that deployment.  Adams' non-career military service overlapped with his Cleveland civil service for about twenty-seven (27) years. However his overlap includes several years after the Defendants abandoned, without explanation or compensation, their wrongful practices of denying their reservist employees (like the Plaintiffs) their USERRA and Ohio PML in 2019 (which allegations will be set forth in full, relevant detail below).  The Defendants started paying all Cleveland's employee reservists their USERRA and Ohio PML, including Adams, in 2019.  Thus Adams is only entitled to about twenty-one (21) years of USERRA and Ohio PML backpay, during this time.

     3. Defendant City of Cleveland is a chartered municipal corporation formed, operated, and governed under the Constitution and laws of Ohio.  It is the county seat of

3

Cuyahoga County, Ohio. It is governed and operates through its elected and appointed officials, the Mayor, Cleveland City Council and through its officers, commissioners, directors, agents, and employees. Under the laws and constitution of Ohio, it is a sovereign, municipal corporation. The principal place of business of the government of Cleveland, concerning the gravamen of this complaint, is the address listed above, Cleveland City Hall. Cleveland City Hall is the main place of business of Cleveland's Mayor, City Council, Law Department and Department of Public Safety (which includes the Division of Police).

4. The Defendant Law Director of the city of Cleveland, Mr. Mark Griffin, Esq., is an appropriate official to receive service for Cleveland. His offices are also at City Hall.

5. The Defendant Cleveland City Council is Cleveland's legislative body. Pursuant to the Charter of the City of Cleveland, the City Council is also responsible for appropriating funds for the payment of financial obligations of the City. Defendant Council's liability in this matter started in 1982 when it enacted the unconstitutional PML ordinance and historically began to participate in the illegal policy of not paying Cleveland employee reservists USERRA and Ohio PML, including PML backpay.

6. The Defendant Ami Patel is a former Assistant Director of Law for the Defendant City of Cleveland during times relevant to these claims. She has individual liability in this case because during the time she was an employee of the Defendant Cleveland, she created a legal document that counselled and enabled the Defendant and its duly elected officials, officers, commissioners, agents and employees to violate USERRA under the pretense that, if they were successfully challenged on the issue, they

4

should claim they were following mistaken legal counsel—her legal counsel—in good faith. Examining this document in context of the time and facts of this case, it is clear that Defendant Patel created and promulgated that document to the Defendant Cleveland in knowing violation of USERRA, in an attempt to allow the Defendant Cleveland to escape liability for knowingly violating the USERRA rights of hundreds of its military reservist employees, like the Plaintiffs, for an indefinite period of time into the future. These allegations will be further described below in full, relevant detail.

7. The Defendant William Menzalora is a current Chief Assistant Law Director for the Defendant City of Cleveland, in its Law Department. The Defendant Menzalora has been an Assistant Law Director for many years prior to this litigation, including for many years relevant to the facts and events this case. He was a senior attorney to Defendant Patel in the Law Department when she authored the document described above. He is individually liable to the Plaintiffs because it is the belief of the Plaintiffs that Menzalora was aware of this document and supported and followed it. He was an active part of the conspiracy of the Defendants to knowingly violate the rights of Cleveland's military reservist employees concerning USERRA and Ohio PML from 1982 through 2019. Prior to working for the Defendant Cleveland, Menzalora worked as a private attorney practicing, *inter alia*, labor law. He was previously counsel of record in a lawsuit representing a trade union of Akron police officers unsuccessfully trying to claim their Ohio PML from the City of Akron. The published judicial opinion from this lawsuit, *FOP, Akron Lodge No. 7, et al., v. City of Akron* (Dist. 9, 2002), is one of the *Mullen* progeny: a series of Ohio opinions wrongfully relied upon by the Defendants as

justification not to pay USERRA and Ohio PML. Menzlora's liability to the Plaintiffs will be set forth in full relevant detail below.

## II.   <u>JURISDICTION</u>

8.   This case involves primarily claims made under multiple provisions of and under more than one of the regulations of a Federal statute titled the "Uniformed Services Employment and Re-employment Rights Act of 1994", (popularly known as "USERRA"), 38 U.S.C. §4301, *et seq.* One section of that statute gives this Court exclusive, original jurisdiction over the claims made in this complaint: 38 U.S.C. §4323(b)(3) & (i). The parties all reside and are located in the Northern District of Ohio. Most of the relevant conduct took place inside of Ohio. To the extent that this case also involves claims under Ohio state statutes or the ordinance of a political sub-division of Ohio, such issues are ancillary subject matter to the main claims at issue. This Honorable Court has supplemental jurisdiction over them in accordance with 28 U.S.C. 1367. The gravamen of this complaint is that the Plaintiffs are a retired and a current U.S. military reservist employee of the Defendant City of Cleveland. They allege that the Defendants wrongfully denied them statutory employment benefits: their USERRA and or Ohio PML benefits, from June of 1993 through September of 2001 and from 1998 through 2019, respectively. The Plaintiffs further allege that the denial of these benefits damaged them in the amount of roughly one month of their Cleveland civilian salary for every calendar year of their former employment during which they were denied these benefits. Their damages probably amount to more than fifty thousand dollars ($50,000.00) for Brooks and to more than one hundred thousand dollars ($100,000.00) for Adams.

9. Five authorities (at least) make the Defendants liable to the Plaintiffs for their PML backpay and they are discussed in relevant detail below. These are provisions of the USERRA, of the regulations thereunder, of the Ohio PML statute and two distinct rules of relevant statutory construction well-settled under U.S. Supreme Court case law. USERRA will also require the Defendants to pay the Plaintiffs double their proven compensatory damages, their attorney's fees, all of their reasonable litigation expenses of this action and to bear the Court costs themselves.

## III.   THE FACTUAL BACKGROUND OF THE COMPLAINT

10. The relevant facts concerning the Complaint are straightforward. First, the Plaintiffs allege that the Defendants denied them their USERRA and Ohio PML benefits during the periods alleged above. Second, USERRA and Ohio laws make PML the law of the United States, the law of Ohio and mandate that the Defendants pay the Reservists their USERRA and Ohio PML backpay claims. Third, the Defendants' non-compliance with the USERRA during this time was knowing. This is demonstrated by the Defendants' historical construction of the City's problematic, unconstitutional, and impermissibly vague 1982 PML ordinance. It is further demonstrated by the Defendants' unconstitutional, bizarre human resources policy on military leave that in one sentence explicitly stated it was intended to comply with USERRA, while violating it in the next (as well as in several other places throughout). The City's HR PML policy (and other of its employer policies) also violated the Federal regulations implementing USERRA as well as the U.S. Supreme Court caselaw construing it. Furthermore in previous related litigations the Defendants have frivolously committed fraud upon the other courts by

7

arguing that USERRA didn't apply to their 1982 PML ordinance or policies, etc., while acknowledging that USERRA and the Ohio PML statute determined Cleveland's PML obligations and legalities for the City in their own documents. The City's knowing non-compliance with USERRA  is most clearly evinced in the numerous anti-PML provisions in its collective bargaining agreements (hereinafter, "CBAs") it has imposed on all its unions.  At the times the Defendants were imposing these CBAs on their unions, they knew that USERRA benefits, including PML, could NOT be restricted, etc., by CBAs or other employer agreements or practices.

### A.  THE  DEFENDANTS WRONGFULLY REFUSED TO PAY THE PLAINTIFFS THEIR FEDERAL AND OHIO PML.

11.    The Plaintiffs joined the Cleveland Police Department in 1993 and in 1998, respectively.  They inquired of the Defendant City if they were entitled to USERRA and Ohio PML.  The Defendant City of Cleveland, through its officers, employees and agents appointed over them, always wrongfully denied the Plaintiffs their USERRA and Ohio PML.  The Defendants always told them  that they were not entitled to their USERRA and Ohio PML because of the 1982 Cleveland PML ordinance, because of the PML provision in the collective bargaining agreements (hereinafter CBAs)  negotiated by the Defendants with their union, because of the City's human resource policy against USERRA and Ohio PML and because of the Cleveland Police Department's Divisional Notice discouraging the taking of PML, *inter alia*.  These actions by the Defendants to the Plaintiffs during this time were wrongful and in knowing non-compliance with USERRA and the Ohio PML statute.

## B. THE PLAINTIFFS ARE ENTITLED TO PML BACKPAY FROM THIS PERIOD.

12. Since 1994 the USERRA has created and or protected USERRA PML and the Ohio PML statute in favor of the Plaintiffs by pre-empting any operation of the 1982 Cleveland PML ordinance against USERRA and Ohio PML. One USERRA provision protects state laws that provide employment benefits to military reservists which are greater than those provided by the USERRA. The Ohio PML statute contains a defined PML benefit which is greater than the conditional PML benefits contained in the USERRA, so this provision allows the Ohio PML benefit under USERRA (as opposed to simply pre-empting it from the field of PML legislation). Another USERRA provision preempts any state statute or local ordinance that would reduce or eliminate any benefit created by USERRA. Since USERRA creates conditional PML benefits, the 1982 Cleveland PML ordinance could never have been construed and enforced to limit USERRA or Ohio PML: thus this provision of USERRA simply pre-empted the 1982 ordinance from the field of PML legislation. Therefore although Defendants always argued that Cleveland's 1982 PML Ordinance reduced the Ohio PML benefit of Cleveland's reservist employees, legally the Cleveland ordinance was always pre-empted from operation against it by the USERRA. Therefore, the USERRA compels the Defendants to pay Brooks' and Adams' Ohio PML backpay claims. These same provisions of the USERRA, and U.S. Supreme Court caselaw, always prevented any of the Defendants' contracts, CBAs and employer agreements, practices, and policies from restricting the Plaintiffs' rights and entitlement to their USERRA and Ohio PML. Congress has explicitly provided that there is no statute of limitations on the USERRA.

9

This absence of a statute of limitations applies also to the Plaintiffs' USERRA and Ohio PML backpay claims.

13. PML was first created as a statutory right and benefit for Federal permanent public employees who were also drilling military reservists, by a law separate from and predating USERRA, in April of 1917, several months prior to the United States' entry into WWI. PML as a statutory right and benefit for Ohio permanent public employees, was created by an Ohio state law separate from and predating the USERRA, enacted on July 29, 1931, eight years prior to WWII and ten years prior to the U.S. entry into it. The relevant provisions of the statute in its present version, R.C. 5923.05 "Paid military leave for permanent public employees," created a defined PML benefit for Ohio reservist permanent public employees during their normal, annual, peacetime reserve military duty. This statute applied to the Plaintiffs at all times relevant to this complaint. PML is a benefit American permanent public employee (civil servant) military reservists have enjoyed and relied upon for over 100 years. It is Federal law and Ohio law. As stated above, it has been protected by USERRA since 1994—almost forty (40) years. More than forty (40) sister states and the District of Columbia have PML laws.

14. The Ohio PML benefit compensates reservist permanent public employees for any civilian workdays they miss to attend their normal, annual, peacetime, reserve military training, at the rate of one (1) day of PML for each day of civilian work missed, for up to twenty-two (22) days per calendar year. Most full time Ohio public employees miss no more than twenty-two (22) civilian workdays annually to perform their normal peacetime reserve service obligation. There are approximately twenty-two (22) workdays in the average calendar month. Therefore this benefit is worth about one (1)

calendar month of pay per calendar year for any Ohio military reservist employee who

performed his or her full, normal peacetime reserve military service. This includes

Brooks and Adams during the periods of their reserve military service described above.

The Plaintiffs performed their full, annual, peacetime, military reserve duty, at least,

during all periods relevant to this complaint.

### C. THE DEFENDANTS ADOPTED A POLICY OF KNOWING NON-COMPLIANCE WITH THE USERRA AND THE OHIO PML STATUTE FROM 1982 THROUGH 2019.

15.  The Defendants initially chose to comply with the Ohio PML statute when

Ohio first enacted a PML statute in 1931. They paid their reservist employees their

proper Ohio PML from 1931 to 1981, a period of fifty (50) years.

16.  The Defendants later chose to stop complying with the Federal and Ohio

PML in 1982. In 1982 they wrongfully and unconstitutionally enacted §171.57 of

Cleveland's Municipal Codified Ordinances, titled "Military Service Leave of Absence;

Benefits During Service." Brooks and Adams respectfully draw this Honorable Court's

attention to the fact that the very title of this Ordinance makes it facially unconstitutional.

Ohio political subdivisions have no military powers. The Ohio Constitution makes it

clear that Ohio only has the limited military powers to appoint its own officers over, and

to train, the Ohio militia. That training, however, is required to occur only under a

regimen provided to it by the U.S. Congress. The Ohio Constitution retains all its limited

military powers to the state government, and delegates none to its political subdivisions.

The U.S. Constitution explicitly retains all other military powers to the President and

Congress of the United States: to the Federal government. Since PML results from

authorized militia training and the Ohio General Assembly has made PML during

authorized militia training the law of Ohio since 1931, the Defendants never had the

constitutional power to enact an ordinance, etc., contrary to the Ohio PML statute. A

copy of this 1982 PML Ordinance is attached to this complaint as Exhibit 1. The

Defendants wrongfully construed this Ordinance to strip Cleveland military reservist

employees of their USERRA and Ohio PML benefits. The Defendants construed this

ordinance to pay their reservist employees PML at a conditional rate, only. Cleveland

paid its reservist employees PML only on the condition that their monthly military rate of

pay was less than their monthly city rate of pay. Then they would be paid only the

difference between their monthly city and military pay rates. Since most of the City's

reservists had a higher military rate of pay than their civilian rate of pay, the Defendants

wrongfully refused to pay most or all of their reservist employees their USERRA and

Ohio PML. The Defendants used the wrongful construction and enforcement of this

ordinance to justify their wrongful denial of USERRA and Ohio PML to its reservist

employees from 1982 to 4/17/2019. The Defendants continued this policy throughout the

Global War on Terror, even after witnessing their reservist employees mobilizing to

active duty to fight this war in numbers unprecedented since WWII. They continued this

policy towards their reservist employees even as Ohio suffered one of the highest tolls of

servicemember deaths, wounded and disabled during the Global War on Terror of any

state in the union. The blackletter text of the 1982 PML ordinance evinces that these

USERRA violations of these Defendants were knowing. First, the 1982 PML ordinance

makes NO references to USERRA or the Federal or Ohio PML statutes. Second, it does

not explicitly prohibit the City from paying these PML benefits or rates. Third, the

blackletter text of the 1982 PML ordinance only commands the City to pay a very small number, or an empty set, of Cleveland employee military reservists, a differential rate of PML that is higher than the differential PML rates of USERRA and Ohio PML. Again, it did not prohibit the Defendant City from paying either USERRA conditional or Ohio defined benefit PML. Therefore proper application of the U.S. Supreme Court rules of statutory construction concerning statutes (etc.) pertaining to military servicemember pay or Veterans rights and/or benefits (the "Veterans' Canon") should have resulted in the City of Cleveland paying Brooks and Adams their full USERRA and Ohio PML.

17. As stated above, the Defendants further evaded their duty to pay their reservist employees their USERRA and Ohio PML through collective bargaining agreements (hereinafter "CBAs). They wrongfully forced most of their employees' labor unions to negotiate PML provisions in these CBAs that appeared to eliminate the union members' rights to receive their USERRA and Ohio PML benefits. The Defendants always told the Plaintiffs their union's CBA's anti-PML provisions forfeited their USERRA and Ohio PML. In fact the Defendants always knew their CBAs, their own employer practices or policies and any agreements they made with their union's management, didn't legally allow them to withhold USERRA or Ohio PML. They did it anyway in knowing violation of USERRA.

18. At all times relevant to this Complaint the Plaintiffs' labor union was the Cleveland Police Patrolmen's Association (hereinafter "the C.P.P.A."). For all years relevant to this Complaint, the Defendants wrongfully compelled the C.P.P.A. to negotiate a military leave provision in its CBAs that denied its reservist employee

members their Federal and Ohio PML benefits.  A relevant excerpt of the CPPA CBA

effective 2016-2019 is attached as Exhibit 2.  The relevant text of the CBA states:

> (23)  Military Leave.  A patrol officer shall be granted an extended leave
> of absence **without pay** for military duty **in accordance with law,**…A
> patrol officer who is temporarily called to active duty (e.g. summer
> training) shall be granted a leave for the duration of such active duty and
> shall be paid the difference between his regular pay and his total military
> pay (upon receipt of a service pay voucher) for a period not to exceed
> thirty-one (31) days in any calendar year…

Exhibit 2, Art. XIII, §23 at pp.28-29.  Emphasis added.  Compelling CPPA members to

go on military leave "without pay" was not "in accordance with law" as it violated the

USERRA and Ohio PML laws discussed above.  This false statement of the law shows

the Defendants' knowing violation of the USERRA.

19.  The Defendants further used a wrongful employment practice to deny the

Plaintiffs their USERRA and Ohio PML benefits.  Brooks and Adams have attached a

copy of the relevant pages of the Defendants "Leave of Absence" policy effective in 2019

as Exhibit 3.  It states:

**CITY OF CLEVELAND**
**Human Resources Policies and Procedures**
**Benefits Policies**
**Leave of Absence**

**I.     Introduction**

…

**VII.   Military Leave.**

    A.     Introduction.
        An employee may take a leave of absence for…reserve
duty in the armed forces of the United States.  The terms of an employee's
military leave are subject to the provisions of the applicable collective
bargaining agreement.  ***The City of Cleveland*** [sic] ***military leave policy is
intended to comply fully with the Uniformed Services Employment and
Re-employment*** [sic] ***Act. (USERRA)***

…

14

C.    Procedure for Taking Military Leave
....
2.  <u>Military Leave – Non-National Crisis</u>
a. An employee who is a member of any reserve component of the armed forces of the United States is entitled to a leave of absence for military service…in field training or active-duty periods[sic]

b. Subject to the provisions of the applicable bargaining agreement, the City will pay the difference in compensation between the employee's total military pay and the employee's City pay if the employee's military pay is less than the employee's City pay…
…
d. Compensation and benefit coverage may vary according to applicable collective bargaining agreement.

Exhibit 3, at pp. A-9 & A-10. ***Emphasis added.*** The text here is dispositive of this case. The blackletter text states that City's military leave policy was intended to comply with USERRA:  this is an admission by the Defendant Cleveland that it knew that PML in Ohio, even in Cleveland, was determined first and foremost by the USERRA.  Tellingly, the immediately preceding sentence of the City's HR policy states a rule contrary to USERRA: that the terms of each employee's military leave rights were determined by the PML provision of his union's CBA with the City.  Such a rule was always contrary to the text of USERRA because USERRA, the regulations thereunder and U.S. Supreme Court jurisprudence interacted to compel any employer, including Defendant Cleveland, to grant PML to all its reservist employees if it gave it to some employees.  Furthermore if an employer tried to vary PML amongst its individual reservist employees in terms of entitlement and or rate, by using differing CBA provisions, as Cleveland clearly did at all times relevant to this complaint, any reservist employee could demand the most favorable CBA PML provision paid to any Cleveland reservist by his or her union. The misleading

15

text of this employment practice further shows that the Defendants' violation of the

USERRA was knowing.

20.  The blackletter text of USERRA expressly prohibits employers from forcing

reservist employees to use personal or vacation days, instead of taking PML, while

performing their reserve military service.

21.  The Defendant City, through its Division of Police, created another

employment practice that violated this USERRA provision knowingly.  This policy

stated, in relevant part:

> Unit timekeepers shall enter a Division of Police member's time as "08" to indicate a Military Leave of Absence (MLOA) when that member takes a MLOA during what would normally be a regular tour of duty.  In accordance with City policy, this will result in a pay adjustment to the member for that pay period.
>
> For all the MLOA days that are **not** the result of a "call up," the member's pay will be held in abeyance on a day-for-day basis.
>
> Upon the members return, members must submit the "Leave and Earnings Statement" ("LES") for that time period in order for them to receive the pro-rated pay that is due to them.  Failure to do so will result in the member not receiving any City pay for the time they were on MLOA ("08") time.
> …
>
> Members who use other time off in lieu of MLOA ("08") time are not required to submit an LES, as their pay has not been adjusted.
>
> For instance, if the MLOA falls on the member's V-days or furlough, or the member uses PH-days or other compensatory time is approved by the member's commanding officer, the member will not have a MLOA ("08") pay adjustment and therefore need not submit an LES.

Cleveland Division of Police Divisional Notice 09-50, "Military Leave of Absence."  The

Plaintiffs were subjected to this policy at all times relevant to this case and it has caused

some of their damages.  It compelled them to use personal days, sick days, and perform

other administrative procedures that further economically damaged them. It is further evidence that the Defendants' violations of the USERRA were knowing.

22. In 2011 a duly elected and serving member of Defendant City Council, Councilman Terrell Pruitt of Ward 1, was also a captain and a drilling reservist with the Ohio Army National Guard. During that year he received military orders to deploy to Afghanistan with his reserve unit. He informed Defendant City Council that he would be absent from Ohio and therefore from his duties at City Council for a deployment to active duty projected to be one year in duration, starting in 2011. Defendant City Council then took affirmative action to grant councilman Terrell Pruitt his full City salary for the entire duration of his active military duty, overseas deployment. This act granted one of its own members an effective PML benefit that was twelve (12) times greater than the Ohio PML benefit Defendant City Council denied most or all of Cleveland's reservist employees through their unconstitutional ordinance of 1982. Council did this despite the fact that they knew that: 1) Pruitt would be drawing his full military pay and allowances during the entire period of his deployment; and 2) his full military pay and allowances was substantially larger than his Councilman's salary. This act shows that the anti-PML policy of the Defendants was arbitrary, hypocritical, and knowing. Defendant Council gave its own member an effective PML benefit more than twelve (12) times the value of the PML benefit they denied the Defendants' reservist employees, who were their own constituents. Images of news articles reporting these events are attached as Exhibits 4-5.

23. The Ohio PML statute was amended in 2001, effective November 20. The relevant change did not affect the Plaintiffs' claims. Due to the way that emergency medical technicians and firefighters in Ohio were historically scheduled to their civilian

duties, at that time, the Ohio General Assembly amended the PML statute to allow them to circumstantially claim appropriately higher rates of PML calculated by the gross hours of work missed per year to attend Reserve duty as opposed to calculations of eight-hour workdays missed per year to attend Reserve duty. The blackletter text of the law explicitly limited this change to only "public safety employees." The blackletter text further limited the definition of public safety employees to only two (2) occupations: "...a permanent public employee who is employed as a fire fighter or emergency medical technician...". This amendment was ignored by the Defendants from 2001 through 2007.

24. During 2007 a Cleveland EMT reservist grieved his union and the City for non-payment of his amended Ohio PML (as a public safety worker EMT). In July of 2007 an arbitrator upheld this grievance and ruled that the relevant EMT's union's (the "Clevland Association of Rescue Employees" and the "Communications Workers of America", through their local "C.A.R.E./ILA, LOCAL 1975, AFL-CIO")(hereinafter "the C.A.R.E.) CBA required the Defendant City to provide C.A.R.E. members with full Ohio PML, instead of the City's wrongful construction of its 1982 PML ordinance. It is telling that at this point the City accepted this incorrect procedure. The Defendant City chose not to challenge in any court whether the arbitrator's ruling and or order was beyond the scope of the CBA grievance process. It clearly was. Instead the City amended its CBAs with these two unions (EMTs and EMT dispatchers) to reflect that these Cleveland employee reservists' PML rights were determined by USERRA, the Ohio PML statute and the Ohio Veterans statute. While the Plaintiffs were never members of these unions, the changed CBAs are not only relevant to this complaint, they are dispositive of it. The new CBA language meant that the Defendants made two (2) legal admissions dispositive

18

of this case.  First, that PML for Cleveland reservists was always determined by

USERRA and the Ohio PML statute (and the Ohio Veterans' statute) instead of the

Defendants' wrongful construction of the 1982 PML ordinance.  Second, that PML for

Cleveland employee reservists was, *de jure*, NOT a "matter of local self-government"

within the meaning of the "Home-rule Amendment" to the Ohio Constitution.  A relevant

excerpt of the CBA between the Defendants and C.A.R.E., effective from 2013-2016, is

attached as Exhibit 6.  It states:

> E.     Military Leave
>
>        The City will abide by state and federal law, including the Federal
> Uniformed Services Re-employment and Re-employment Rights Act [*sic*]
> (USERRA), Section 38 U.S.C. 4301 et seq. and the provisions contained
> in Ohio Revised Code, Title 59, Sections 5903 et seq. (Veterans Rights).

Exhibit 6, section E, at p. 9. See paragraphs 9-14, *supra*.  The text above is the entire

Military Leave provision of the EMT CBAs.  This text is dispositive of this case because

the Defendants acknowledged that Federal and Ohio law, specifically the USERRA and

Ohio Veterans' Rights statute, determined PML in Ohio.  The City effectively admitted

PML is not a matter of local self-government.  It further illustrates the intellectual

dishonesty and arbitrariness of the Defendants' anti-PML policy.  It is further evidence

that the Defendants' violations of USERRA were knowing.

25. The EMS division of the Defendant City separately promulgated a city order

allowing the new CBAs for their EMTs and dispatchers; an order made necessary by the

framework of the City's systematic, knowing violations of USERRA concerning PML.

This Order paid Ohio PML to the members of the C.A.R.E. and C.W.A. unions, only.

This was styled an "Emergency Medical Service General Order."  A relevant excerpt of

that Order is attached as Exhibit 7.  It states in relevant part:

19

**Emergency Medical Service General Order** No. 2.08

...

Subject: Military Leave Policy—C.A.R.E. and C.W.A.

...

**Policy:** ...It is the policy of the Division of Emergency Medical Services to accommodate those military obligations pursuant to Section 38 U.S.C. 4301 et seq. of the U.S. Code, the Uniformed Services Employment and Re-employment Rights Act of 1994 and O.R.C. 5923.05...

...

C.  Members of the C.A.R.E. and C.W.A., (excluding EMDs) who are members of the armed services are entitled to leaves of absence from their respective duties with full salary for:

i.    Such time as they are in the military service on field training or active duty for periods; however, actual paid Military Leave shall not exceed 408 hours (17 twenty-four hour days) per calendar year (O.R.C. 5923.05 A2).

...

D.  Members of C.A.R.E. who are classified as Emergency Medical Dispatchers (EMDs), who are members of the armed services are entitled to leaves of absence from their respective duties with full salary for:

i.    Such time as they are in the military service on field training or active duty for periods; however, actual paid Military Leave shall not exceed (31) days in any one calendar year.  However, actual paid Military Leave shall not exceed 176 hours (22 eight hour days) per calendar year (O.R.C. 5923.05 A2).

Ex. 7. pp. 1-2. Again, the Plaintiffs were not in these unions. The significance of this order is that it contains two (2) effective admissions by the Defendants, collectively: (1) that PML for Cleveland reservist employees was properly determined by USERRA and the Ohio PML statute; and (2) that PML was therefore never a matter of local self-government. The Defendants' denial of Ohio PML to the Plaintiffs was wrongful, arbitrary, and capricious, as well as driven by anti-reservist *animus*. The Defendants' failures to comply with USERRA were knowing.

26.  The 2001 "public safety employee" amendment of the Ohio PML statute continued to trouble the Defendant Cleveland beyond 2007. In 2010 the firefighters pushed the City and their union to change the PML provision in their CBA to match the

C.A.R.E. PML provision:  they wanted Ohio PML and the higher rates for public safety employees (who, again, were defined explicitly as "…a fire fighter or emergency medical technician." O.R.C. 5923.05(A)(2)(g)).  These proper labor requests ended up eventually on the desks of the Cleveland's Director of Public Safety and the Commissioner of the EMS.  These two management officials eventually, properly, jointly forwarded these proper demands to the City's Law Department.  Defendant Ami Patel responded for the Law Department, writing and individually signing a Law Dept. Memorandum (hereinafter "the Memorandum") addressed to the Director and Commissioner, that addressed these demands and gave these officials "cover" from the Defendant's Law Dept. to wrongfully deny these requests and continue instead the City's systematic, knowing violations of USERRA, concerning PML, against their own employee reservists, including the Plaintiffs.  The Memorandum, tellingly labelled "confidential" and "privileged," was dated November 23, 2010.  In addition to sending this memorandum to these management officials in the Defendant Cleveland's Public Safety Dept., she circulated it at least to: Cleveland's Director of Law; Cleveland's Chief Counsel, Law; the Dir. of Personnel and HR; the Labor Relations Mgr.; the Dir. of Finance; and the Commissioner of Accounts.  This Memorandum made false legal statements with the intent to provide the Defendant City with Defendant Patel's version of "plausible deniability:" protection from civil liability for its continuing knowing USERRA violations against the Plaintiffs and other Cleveland reservist employees who were not C.A.R.E. members (after 2007)(which included the Plaintiffs).

27.  A copy of the Memorandum, with its attachment, is attached as Exhibit 8.  In the first paragraph of the Memorandum Patel admitted that the City had provided

C.A.R.E. with Ohio PML via an immediate, amended CBA. In the second paragraph of the Memorandum Patel admitted that the 2001 PML amendment gave higher PML rates for "public safety employees" and that "public safety employees" are defined "…as a firefighter or an emergency medical technician." She also admitted that she attached an accurate copy of the amended statute to the Memorandum, with the changes "…underlined." In third paragraph, however, Patel made intentionally false statements about the law. First, she wrote that it was her understanding that the 2001 Ohio PML statute amendment only applied to EMTs and EMT dispatchers (C.A.R.E. and C.W.A. union members, respectively). This contradicted her previous statements about the simple blackletter text of the amendment. Then she wrote that, "The rest of the City's employees are covered under Clevland Codified Ordinance 171.57." This contradicted at least three (3) extant City documents described above, as well as the City's conduct in the C.A.R.E. grievance described above. Then she falsely wrote that "[a]ccording to the amendment to O.R.C. 5923.05, **only emergency medical technicians** in the Division of EMS are entitled to the increase…" in PML rates for public safety employees. This contradiction of the blackletter text of that amendment cannot be explained or excused. This legal advice and counsel about the 2001 Ohio PML amendment was intentionally and knowingly false and designed to cause scores of Cleveland firefighters to assent to illegal CBAs against their own legal and financial interests, to the Defendant City's illegal windfall, in an amount easily in excess of tens or even hundreds of thousands of dollars. Patel's Memorandum damaged Cleveland firefighter reservists in knowing violation of USERRA and the Ohio PML statute. It damaged all other Cleveland reservist employees who were not members of the C.A.R.E. or C.W.A. unions after 2007,

including the Plaintiff in violation of the Ohio PML statute and in knowing violation of USERRA. The City and the other Defendants have knowingly adopted Defendant Patel's false statements about the law and false legal advice and counsel and have promulgated and amplified it, to the extent of creating a civil conspiracy to evade liability for knowingly violating USERRA.

28.  Defendant Menzalora was an employee of the Defendant Cleveland working as an Assistant Director of Law in its Law Department, senior to Defendant Patel, when she wrote the Memorandum.  He reported to two (2) of the senior lawyers in that Department that received the Memorandum.  He was aware of the Memorandum and received a copy of it.  Menzalora has been lead City Counsel on litigation related to this complaint wherein Patel acted as lead outside Counsel for the City and he has approved for the City frivolous arguments and fraud upon the courts that Patel has committed in her unprofessional conduct representing the City as lead outside Counsel.  The undersigned has previously moved for sanctions against Patel for unprofessional conduct in this litigation.  Patel has submitted a "cropped" opinion to court, amounting to fraud upon a court, *inter alia*.  Menzalora shares individual liability with Patel for damages caused by the Memorandum of 11/23/2010.  He has facilitated and participated in her frivolous and unprofessional conduct in prior litigation related to this complaint.

29.  On August 23rd, 2018, a Cleveland reservist employee named David H. Lam filed a lawsuit against the Defendant City in the Ohio state courts for wrongfully denying him his Ohio PML starting in 2008.  A copy of the Docket from Lam's case is attached as Exhibit 9.

30.  While this case was pending in the trial court, in the discovery phase, the Defendant City Council partially reversed the anti-PML policy it had wrongfully pursued since 1982.  Using a legislative procedure described as "Emergency" it amended its 1982 PML ordinance so that it would provide Cleveland's employee reservists a PML benefit identical to the benefits provided by R.C. 5923.05(A) & (B):  100% of the annual Ohio defined benefit PML  The Defendant City Council enacted this amendment on April 17, 2019, effective April 19, 2019.  A copy of the full text of the Amended PML ordinance is attached hereto as Exhibit 10.  There were no accompanying communications from Defense Counsel to Plaintiffs' counsel constituting an attempt by the Defendants to negotiate a settlement of the lawsuit.  In the prior related litigations to this case no counsel for the Defendants has ever responded to any contact by the reservists' counsel to discuss settlement, ever.  The Defendants have never made any offers to discuss settlement with the Plaintiffs.  Without apology or explanation, the Defendants mutely amended their 1982 PML ordinance and began paying their military reservist employees 100% of their Ohio PML.  For almost six (6) years now, the Defendant City has apparently altered its budget to pay all of its reservist employees their USERRA and Ohio PML without apparent budgetary and fiscal ill effect or bankruptcy.  Defendant Cleveland can no longer credibly claim paying USERRA and Ohio PML is unaffordable or even economically burdensome.  The motivation for the Defendants' longstanding unconstitutional, illegal and anti-reservist policies is disturbingly murky.

31.  This amendment partially mooted the pending lawsuit.  The amendment cured the vagueness of the original text, but it did not change the fact that the Defendants still had no constitutional ability or powers with which to enact and enforce an ordinance

concerning military leaves of absence. The 1982 ordinance was still *ultra vires*, even as amended. The practical effect of their collective acts since 4/19/2019 has simply been as if they just stopped all of their wrongful acts concerning non-payment of USERRA and Ohio PML from that day forward. This stopped all PML present and future damages to David Lam and Cleveland's other reservist employees as of April 19, 2019. The amendment of the ordinance made no attempt to address the past damages or PML backpay claimed by the Plaintiff Lam (now claimed by the Plaintiffs). Consistent with the arbitrary nature of the Defendants' anti-PML policy to date, and with the knowing nature of their continuing violation of the USERRA, they continued to litigate the remainder of that case and they have prevailed against Lam in Court until the date of this filing. They continued to deny certain Cleveland employee reservists PML backpay for a period during which they had been paying other Cleveland employee reservists the same PML benefits.

32. The Plaintiffs draw this honorable Court's attention to the text of the amended Ordinance. It is much longer and almost 100% changed from the original. The two key provisions of the amended Ordinance are as follows:

> (a) All officers and employees of the City who are members of the Ohio organized militia or members of other reserve components of the armed forces of the United States, including the Ohio national guard, are entitled to a leave of absence from their respective positions **without loss of pay** for the time they are performing service in the uniformed services, for periods of up to one month, for each year in which they are performing service in the uniformed services.
> ...

> And

> (f) any officer or employee whose employment is governed by a collective bargaining agreement with provision for performance of service in the uniformed services shall abide by the terms of that collective

bargaining agreement with respect to the performance of that service, **except that no collective bargaining agreement may afford fewer rights and benefits than are conferred under this section.**

Ex. 10, **emphasis added**. The emphasized text shows that the Defendants' ordinance once wrongfully construed as anti-PML is now clearly a PML ordinance. First, the amended ordinance gives all the Defendants' reservist employees military leave "without loss of pay" or PML. The PML benefit of the amended ordinance is almost exactly equal to the Ohio PML statute defined benefit of O.R.C. 5923.05(A) (tellingly without ANY reference to either USERRA or the Ohio PML and Veterans' Rights statutes). Second, the ordinance amendments now prohibit the anti-PML provisions of its CBAs from affording "…fewer rights and benefits than are conferred under this section…." This CBA language is almost identical to the language of the Ohio PML statute on this subject. These changes to the Defendants' previous anti-PML policy shows that their prior violations of the USERRA were knowing.

## IV.    **CLASS ACTION**

### A.    CLASS ACTION PREREQUISITES

33. Pursuant to Fed.R.Civ.P. 23, Brooks and Admas bring this class action on behalf of themselves and all other members of a class defined as

> All individuals who are current, former or retired permanent public employees of the Defendant Cleveland who are or were also drilling military reservists who were not been paid all the Ohio PML they accrued pursuant to R.C. 5923.05, and or any provision of USERRA, and the regulations thereunder, calculated during the time that individual was both a military reservist and a permanent public employee of Cleveland, between the dates of January 1,1982-April 19, 2019.

34. The class is so numerous that joinder of all members of the class is impracticable. The class may consist of over two hundred and fifty (250) members.

B.     COMMON QUESTIONS OF LAW AND FACT

35.   There are questions of law and fact that are common to the class, including but not limited to the following:

(a)  Whether the Defendant's 1982 PML ordinance violated the Ohio Constitution;

(b)  Whether the Defendant's 1982 PML ordinance, and or any of its several policies, employer practices, orders, etc. restricting PML violated the U.S. Constitution;

(c)  Whether the Defendants 1982 PML ordinance was pre-empted by the USERRA;

(d) Whether the Defendants' wrongful construction and enforcement of the 1982 PML Ordinance violated the USERRA;

(e) Whether the Defendants' wrongful construction and enforcement of the 1982 PML Ordinance ignored relevant U.S. Supreme Court caselaw on the statutory construction of USERRA, specifically and on laws, etc. concerning military servicemembers' pay and veterans' benefits generally;

(f)  Whether the PML provisions of the various Cleveland CBAs signed with the named Plaintiff's and potential class members' Unions, that limited PML, violated the USERRA;

27

(g) Whether any of the Defendants' HR policies or departmental or divisional orders or other employers' practices, etc. that limited PML, violated the USERRA;

(h) Whether these violations of the USERRA by the Defendants were knowing?

(i) Whether the Defendants' wrongful construction of the 1982 ordinance violated the Ohio PML statute and the Ohio Veterans' statute?

36. The named Plaintiffs will fairly and adequately protect the interests of the class members. Their claims are typical of the claims of the class. The named Plaintiffs' interests are not antagonistic to the interests of the other potential Plaintiff class members.

37. The questions of law and fact that are common to members of the class predominate over any questions affecting only individual members. The primary questions pertinent to the issue of liability, as to all potential class members, are whether they were paid all their USERRA and or Ohio PML pursuant to the USERRA and to the laws of Ohio, by the Defendants, during the time they were both permanent public employees of Cleveland and drilling military reservists. The determination centers on the behavior of the Defendants. These questions common to the Class predominate over any questions affecting only individual members of the Class.

38. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Adjudication of class members' individual claims would otherwise require hundreds of individual suits with concomitant duplication of costs, attorneys' fees and demands upon court resources. If the individual class members were required to pursue their claims through separate,

28

individual suits, the potential for recovery would be outweighed by the high cost of investigation, discovery and expert testimony related to the liability of the Defendants.

## V.   **JURY DEMAND**

39.  The Plaintiffs hereby demand a trial by jury in this civil action of any and all such issues triable by a Jury.  They make this demand in accordance with the Seventh Amendment to the U.S. Constitution and also with the Federal Rule of Civil Procedure 38.

## VI.   **CAUSES OF ACTION**

COUNT I:  Complaint for Declaratory Judgment

40.  The Plaintiffs incorporate the allegations contained in paragraphs 1 through 39, as if fully rewritten below, verbatim.

41.  The Plaintiffs make a complaint for declaratory judgment pursuant to 28 U.S.C. §§2201-2202 and to Fed.R.Civ.P. 57.

42.  The Plaintiffs have each been both permanent public employees of Cleveland while also serving as drilling U.S. military reservists for many years, as alleged in specific and relevant detail above.  They have always claimed entitlement to USERRA and Ohio PML at all times relevant to this complaint.  The Defendants have always denied them their USERRA and Ohio PML while they were refusing to pay USERRA and Ohio PML prior to 2019.  Now these same Defendants still refuse to pay the

Plaintiffs their same PML claims as backpay claims, while simultaneously paying Ohio PML to their current employee reservists.

43. The Defendants still wrongfully refuse to pay the Plaintiffs their USERRA and Ohio PML claims. The Defendants claim they do so: due to their construction and enforcement of the Cleveland 1982 PML ordinance; due to their enforcement of PML provisions they had imposed upon their labor union in the CBAs negotiated with them between 1982 and 2019; due to the Military Leave provisions they wrote and enforced in their HR handbook/employer practices; and due to their enforcement of the CPD Divisional Notice on PML.

44. Thus an actual controversy exists between the Plaintiffs and the Defendants. Brooks and Adams have been damaged by this controversy by deprivation of their USERRA and Ohio PML. The Plaintiffs respectfully draw this Honorable Court's attention to the fact that the Defendants paid their reservist employees their Ohio PML from 1931-1981. Then they refused to pay it from 1982-2019. While they resumed paying it in 2019 and have paid it since, such a declaratory judgment would benefit Adams, who has several years of civil service left as well as any potential class members who are not retired.

## COUNT II. Violation of USERRA

45. The Plaintiffs incorporate paragraphs 1 through 44 into this paragraph as if fully rewritten below, *verbatim*.

46. Section 4302 of USERRA expressly allows state statutes that establish a benefit greater than a benefit created by USERRA, but pre-empts a local ordinance that eliminates or limits in any way a benefit created by USERRA. USERRA created PML

benefits for U.S. military reservists as early as 1994. The Ohio PML benefit was greater than the USERRA PML benefit from 1931 through the date of the filing of this complaint. USERRA has allowed the Ohio PML benefit over the USERRA PML benefit since 1994, instead of pre-empting it. Section 4302(a).

47. From 1982 to 2019 the Defendants refused their employee reservists their USERRA and Ohio PML benefits due to the Defendants' wrongful enactment, construction and enforcement of the 1982 PML ordinance, claiming it limited or eliminated Ohio and USERRA PML. Because the Defendants claimed that the 1982 ordinance limited or eliminated USERRA and or Ohio PML, USERRA, Section 4302(b), began pre-empting the Defendants' improper construction of the 1982 ordinance no later than 1994. For these reasons the Defendants never could have properly refused to pay the Plaintiffs their USERRA and Ohio PML. These wrongful acts by the Defendants caused substantially all of the Plaintiffs' damages. The Defendants' violations of this section of USERRA were knowing.

COUNT III: <u>Violation of USERRA</u>

48. The Plaintiffs incorporate paragraphs 1 through 47 into this paragraph as if fully rewritten below, *verbatim.*

49. Section 4311(a) makes it a violation of USERRA for an employer to deny an employee any benefit of employment for the performance of military service.

50. From 1982 through 2019, at all times relevant to this complaint, as specifically alleged above, the Defendants denied their employees, including the Plaintiffs, their USERRA and Ohio PML benefits for performing their reserve military

31

service. These continuing violations of this section of USERRA by the Defendants were knowing.

COUNT IV: <u>Violation of USERRA</u>

51. The Plaintiffs incorporate paragraphs 1 through 50 into this paragraph as if fully rewritten below, *verbatim*.

52. Section 4316(b)(1)(B) of USERRA establishes several important rights of servicemembers and military reservists. Relevant to this complaint, if an employer does not offer PML, but grants its employees pay during leaves or furloughs which are comparable to military leave, then USERRA allows military reservist employees to request such rates of pay during their military leaves. Furthermore, relevant USERRA regulations, 20 CFR Ch. IX, §1002.150 & §151, prohibit an employer from offering PML to only some of its reservist employees while denying it to others. If it does, the other military reservists may request the PML granted to others during their own military leaves. Finally if an employer tries to vary its rate of PML amongst its various military reservist employees, any reservist employee may request the highest rate or most favorable terms of PML offered by that employer during their own military leave.

53. From 1982 through 2019 the Defendants claimed they did not provide their military reservists with PML. However during this time they explicitly offered pay for leave comparable to military leave to all the members of the Plaintiffs' union: paid leave for jury duty. Furthermore they paid Cleveland military reservists in the EMS division (Cleveland EMT and EMT dispatchers) full Ohio PML from 2007-2019.

54. From 1982 through 2019, the Defendants denied the Plaintiffs their USERRA and Ohio PML. During this same period they failed to pay them jury duty pay under the

32

C.P.P.A. CBA for the duration of their comparable military leaves.  Furthermore they failed to pay Adams his USERRA and Ohio PML from 2007 through 2019 while paying reservist members of the C.A.R.E. union their USERRA and Ohio PML.  These violations of the Defendants damaged Adams as described above.  These violations of USERRA were knowing.

COUNT V:  <u>Violation of USERRA</u>

55.  The Plaintiffs incorporate paragraphs 1 through 54 into this paragraph as if fully rewritten below, *verbatim.*

56.  §4302(b) of the USERRA prevents any state law or local ordinance from eliminating, limiting or reducing in any way any benefit created by the Act, as stated above.  However it also prevents any policy, plan, practice or other matter by any employer from doing the same, including prohibiting them from establishing additional prerequisites to the exercise of any such right or the receipt of any such benefit of military service.  These rules apply to USERRA PML.

57.  §4316(d) of the USERRA separately and explicitly prohibits any employer from requiring a military reservist to use his or her vacation or annual or similar leave during periods of reserve military service.

58.  As stated above, at some time between 1982 and 2019, the Defendants published Cleveland Division of Police Divisional Notice 09-50, "Military Leave of Absence."  This policy and practice of the Defendants explicitly imposed additional prerequisite actions on the Plaintiffs and other potential class members if they took military leave, instead of using their vacation or annual or similar leave.  The Notice warned that an employee reservist's pay would be withheld and actually forfeit unless the

reservist employee taking military leave submitted their Department of Defense (hereinafter "DOD") and or Defense Finance and Accounting Service (hereinafter "DFAS") "Leave and Earnings Statement" (hereinafter "LES") for each period of military leave they took, speedily upon returning to their workplace at the Defendant City. The Notice did not take into account the circumstances under which the Plaintiffs actually received their LES documents from the DOD/DFAS/OHARNG—various third party government agencies. Historically, individual military reservists do not always receive an LES regularly, in immediate or even close temporal proximity to each instance of military leave during any given fiscal year. Therefore the Notice knowingly and intentionally put a reservists' pay at risk of forfeiture any time he took military leave, whether by an unforeseen accident or even by circumstances beyond his or her control, including bureaucratic error, failure, etc. Again, the Notice explicitly and prominently stated that if the Plaintiffs would use vacation or annual or similar leaves, instead of taking PML, then they would not risk forfeiture of their pay during that period of their reserve military service. This Departmental Notice was a violation of USERRA §4316(d) in that it compelled the Plaintiffs and other potential class members to take vacation annual, or similar leave instead of military leave during their periods of reserve military service. This violation of USERRA was arbitrary and capricious and is further evidence of the anti-reservist *animus* of the Defendants. It was a knowing USERRA violation.

### COUNT VI:  Violation of the Ohio PML Statute

59. The Plaintiffs incorporate the text of paragraphs 1 through 58 into this paragraph as if fully rewritten below, *verbatim*.

34

60. The Ohio PML statute has a defined benefit for PML, as stated above. R.C. 5923.05(A). The Ohio PML statute prohibits any CBA from lessening or eliminating that benefit. R.C. 5923.05(G).

61. As stated above, the Defendants have always refused to pay the Plaintiffs their Ohio PML at all times relevant to this complaint. Thes actions have been the source of the main damages to the Plaintiffs. These acts by the Defendants were intentional, knowing, arbitrary, capricious and committed with anti-military reservist *animus*.

COUNT VII:  Statutory double damages

62.   The Plaintiffs incorporate the text of paragraphs 1 through 61 into this paragraph as if fully rewritten below, *verbatim*.

63.   §4323(d) of USERRA makes the Defendants liable to an Order to pay the Plaintiffs double the amount of their compensatory damages because they knowingly failed to comply with the Act.  Section 4323(d) compels an employer to pay compensatory damages to a claimant who can establish that he or she was damaged by an employer's failure to comply with USERRA. The statute further allows a claimant to recover an  additional amount, equal to his compensatory damages, as "liquidated damages," if that claimant can further establish that the employer's failure to comply with the Act was "knowing."

64. The Defendants are liable to pay the Plaintiffs compensatory damages for their failures to comply with USERRA.

65. The Defendants are further liable to pay the Plaintiffs liquidated damages because these violations were knowing.

COUNT VIII:  Statutory Attorneys' Fees

35

66. The Plaintiff incorporates the text of paragraphs 1 through 65 into this paragraph as if fully rewritten below, *verbatim*.

67. The USERRA, §4323(d), creates liability for the Defendants to pay the Plaintiffs' reasonable attorney's fees and litigation expenses if the Plaintiffs prevail in this action. When a person elects to enforce their USERRA claims in the courts using a private attorney and prevails against their employer, they are entitled to recover any reasonable attorney's fees and other litigation expenses incurred in the action. *Ibid*. The Plaintiffs have retained the undersigned as their private attorney.

## VII. PRAYER FOR RELIEF

WHEREFORE the Plaintiffs request judgment against the Defendants as follows:

1. That the Court issue a Declaratory Judgment in their favor, declaring that: the Cleveland PML ordinance of 1982 was enacted unconstitutionally because PML is pay earned during military service and military pay is set by military regulations and these powers (ordering military organization, setting and issuing pay and promulgating military regulations) are exclusive military powers ascribed and reserved to the U.S. Congress in the U.S. Constitution and never delegated to the several states or their political subdivisions; that political subdivisions in Ohio have no military powers delegated to them under the Ohio Constitution; that USERRA is the current expression of Congressional intent on PML and it explicitly pre-empts Cleveland's 1982 PML ordinance from that field of legislation; that none of the Defendants' employer practices, policies, orders, practices, CBAs or agreements could

36

limit USERRA or Ohio PML; that PML is earned when military reservist employees are absent from their Cleveland workplace, not performing their Cleveland civil service jobs, instead performing their reserve military service, in military uniform and subject to military orders, usually not within the Cleveland City limits and often outside of Ohio, therefore PML can never be a matter for Cleveland local self-government, within the meaning of the Home Rule Amendment of the Ohio Constitution; and finally that PML in Ohio is determined by USERRA, the Ohio PML statute and the Ohio Veterans' statute and these entitle the Plaintiffs and any potential class members to their USERRA and Ohio PML backpay.

2. An award of USERRA compensatory damages for the Plaintiffs for each one in the amount of one (1) month of their salary during each year the Defendants denied them their USERRA and Ohio PML pursuant to §4323(d);

3. An award of common law punitive damages in excess of twenty-five thousand dollars to each Plaintiff ($25,000.00) or statutory liquidated damages in accordance with USERRA for the Plaintiffs for each one in the amount of one (1) month of their salary during each year in the Defendants denied them their USERRA and Ohio PML pursuant to §4323(d).

4. An award of reasonable attorney's fees and reasonable litigation expenses in pursuing this action pursuant to Ohio common law or USERRA § 4323(d);

5. And any other such relief as this Court deems just and proper.

Respectfully submitted,

/s/ Daniel G. Morris
Daniel G. Morris (0040449)

The Law Offices of D.G. Morris, LLC
1920 Stockbridge Lane
Akron, Ohio 44313
Telephone: (216) 598-5451
Facsimile: (216) 961-6462
Email:  dmorrislaw18@ameritech.net
Attorney for the named Plaintiffs